**Penn A. Dodson (PD2244)**
ANDERSONDODSON, P.C.
11 Broadway, Suite 615
New York, NY 10004
(212) 961-7639 tel.
(646) 998-8051 fax
*penn@andersondodson.com*

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MALIK NYARKO** and **BOBAKARY JAITEH,** in their individual capacities and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **M&A PROJECTS RESTORATION INC., M&A PROJECTS INC.,** and **BOGDAN MALINOWSKI,** an individual, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 1:18-cv-5194 <br><br> **JURY TRIAL REQUESTED** |

## INTRODUCTION

1. Plaintiffs both worked as construction laborers for Defendants' building restoration and construction companies. During their employment, for any overtime worked, they, like their coworkers, would receive a second paycheck, at a "straight time" rate of pay. In addition, their work hours were significantly under-counted on a daily basis. To challenge these and other wage violations, Plaintiffs bring this action, by and through their counsel, against Defendants M&A Projects Restoration Inc., M&A Projects Inc., and its principal, Bogdan Malinowski, to recover unpaid or underpaid wages and other damages under the

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (hereinafter "FLSA") and the New York Labor Law, N.Y. Lab. Law, Art. 19, § 650, *et seq.* (hereinafter, "NYLL"). In addition, Defendants engaged in fraudulent reporting activities on Plaintiffs' tax forms.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of federal questions, 29 U.S.C. § 201 *et seq.* of the FLSA.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims by authority of 28 U.S.C. § 1367.

4. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 201 *et seq.* A significant portion of the events giving rise to the instant litigation occurred in Brooklyn; the Defendants' company is based at 33 Dobbin Street, Brooklyn, New York; and one or more of the Defendants named herein resides in this district.

## PARTIES

**Defendant M&A Projects Restoration Inc.**

5. Defendant **M&A Projects Restoration Inc.** (hereinafter "M & A") is a New York corporation doing business within Kings County, and whose principal place of business is located at 33 Dobbin Street, Brooklyn, New York. Its DOS Process agent is listed with the NYS Department of State as M&A Projects Restoration Inc. with an address of 72-09 72nd Place, Glendale, New York 11385. Upon information and belief, this was the home address of Defendant Malinowski at around the time the M&A corporate entity was incorporated in 2004, but is no longer his residence address.

6. Defendant **M&A Projects Inc.** is a New York corporation doing business within Kings

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

County, and whose principal place of business is located at 18 Division Place, Brooklyn, New York. Its DOS Process agent is listed with the NYS Department of State as M&A Projects Inc. with an address of 72-09 72nd Place, Glendale, New York 11385.

7. At all relevant times, the Defendants' business activities were related and performed through unified operations or common control for a common business purpose and constituted a single integrated enterprise within the meaning of the FLSA.

8. At all relevant times, the corporate Defendants had annual gross revenues in excess of $500,000. M&A had multiple projects all over New York City running at any one time, employing dozens if not hundreds of workers.

9. At all relevant times, Defendants were engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

10. At all times material to this action, Defendants were subject to the FLSA and was an "employer" of the Plaintiffs and others similarly situated, as defined by § 203(b) of the FLSA.

**Defendant Bogdan Malinowski**

11. Defendant Bogdan Malinowski, an individual, resides at 8656 Sancho St, Hollis, NY 11423-1217, which is in Queens.

12. At all times material to this action, Defendant Malinowski actively participated in the business of M & A.

13. Defendant Malinowski has an ownership interest in and/or is a shareholder of M & A.

14. Defendant Malinowski is one of the ten largest shareholders of M & A.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Nyarko v. M & A*
USDC, Eastern District of New York

Complaint
Page 3

15. Defendant Malinowski is the owner, founder, and president of the corporation; has the authority to hire and fire; sets policies and practices for the company; and sets the compensation and other terms and conditions of employment for M&A workers.

16. At all times material to this action, Defendant Malinowski exercised substantial control over the functions of the company's employees including Plaintiff.

17. At all times material to this action, Defendant Malinowski was an additional "employer" of the Plaintiffs and others similarly situated, as defined by § 203(b) of the FLSA and NYLL.

**Plaintiff Malik Nyarko**

18. Plaintiff Malik Nyarko is a resident of the Bronx, New York.

19. At all times material to this action, Plaintiff Nyarko was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e).

20. Plaintiff Nyarko worked for M&A from September 20, 2017 to July 3, 2018.

21. Plaintiff's job at M&A was that of a construction helper or laborer.

22. In general Plaintiff Nyarko's job duties consisted of assisting in the restoration of old buildings, such as by helping to lay brick and washing brick walls.

23. M & A did not ask Plaintiff Nyarko to punch in or out *per se*, but the company did keep a handwritten daily log of his and his coworkers' time. Supervisors at the job site would be the ones to make these time entries for the workers.

24. The stated start of the workday for Plaintiff Nyarko and others similarly situated was 7:30am.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Nyarko v. M & A*
USDC, Eastern District of New York

Complaint
Page 4

25. However, in order to begin work at 7:30am, he, like his coworkers, had to arrive significantly earlier than that in order to prepare for the workday. Often Plaintiff Nyarko would arrive at 6:20am, 6:45am, 6:55am – usually somewhere between a half hour and an hour before 7:30am. Then he would have to sign in, receive any instructions that might be necessary, prepare his tools, equipment, and materials so that everything was ready to go to perform the actual project at hand for the day.

26. Despite this preliminary work occurring beforehand, the start time the supervisors would indicate on the time sheet was 7:30am. Thus, the work time occurring before 7:30am was not compensated.

27. Normally the stop time for Nyarko and his coworkers was 4:00pm or thereabouts. However, sometimes the supervisor would tell the crew that they needed to stay late that day, and they might stay on until 5:00 or 6:00pm. Thus, while not every day, there were occasions when he and his coworkers worked a day longer than 10 hours from start to finish. On these occasions, the Plaintiffs (and others similarly situated) were not paid any additional pay as "spread of hours" compensation.

28. Nyarko usually worked five days per week. Sometimes he worked Saturdays as well.

29. Plaintiff Nyarko's rate of pay was $20.00 per hour

30. When Plaintiff Nyarko worked more than 40 hours a week in time logged on the timesheets, he was paid with two separate checks. One check reflected up to 40 hours with standard payroll deductions taken out. The second check, written from a different bank account, was for overtime hours, which were paid out at a straight time rate with no withholding taxes taken out, and no paystub.

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

31. Plaintiff Nyarko received a Form W-2 from Defendants for 2017 indicating only the amounts he received on the paychecks associated with paystubs.

32. For hours over 40 worked in the workweek, Plaintiff Nyarko and others similarly situated were paid at a "straight time" rate (i.e. same as their regular hourly rate)

33. Thus, Plaintiff Nyarko, like others similarly situated, was not paid at a rate of one and one half times his normal hourly rate for all hours over 40 worked in a workweek.

34. While the company provided some major equipment like water hoses, air compressors, pneumatic tools, and some safety equipment like goggles and dust masks, Plaintiff Nyarko and his coworkers were required to provide their own tools and equipment (for example, hard hat/ helmet, work boots, pencils, and tape measure).

35. On at least one occasion, Plaintiff Nyarko had a deduction of $25 taken from his pay for a harness.

36. In addition, a supervisor named Martin initially refused to pay Plaintiff Nyarko for the hours he worked on his last day of employment. Eventually, after about three weeks, Plaintiff Nyarko did receive a check for these hours, but only after he made multiple inquires about it.

**Plaintiff Bobakary Jaiteh**

37. Plaintiff Bobakary Jaiteh is a resident of the Bronx New York.

38. At all times material to this action, Plaintiff Jaiteh was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e).

39. Plaintiff Jaiteh worked for M&A from September 1, 2017 to July 3, 2018.

40. Plaintiff's job at M&A was also that of a construction helper or laborer.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

41. In general Plaintiff Jaiteh's job duties consisted of assisting in the restoration of old buildings and to help lay brick and wash brick walls.

42. M & A did not ask Plaintiff Jaiteh to punch in or out, but the company did keep a handwritten daily log of his and his coworkers' time. Supervisors at the job site would be the ones to make these time entries. Jaiteh would only write his name down.

43. The stated start of the workday for Plaintiff Jaiteh and others similarly situated was 7:30am.

44. However, in order to begin work at 7:30am, he, like his coworkers, had to arrive significantly earlier than that in order to prepare for the workday. Usually Plaintiff Jaiteh would arrive somewhere between a half hour and an hour before 7:30am. Then he would have to sign in, receive any instructions that might be necessary, prepare his tools, equipment, and materials so that everything was ready to go to perform the actual project at hand for the day.

45. Despite this preliminary work occurring beforehand, the start time the supervisors would indicate on the time sheet was 7:30am. Thus, the work time occurring before 7:30am was not compensated.

46. Normally the stop time for Jaiteh and his coworkers was 4:00pm or thereabouts. However, sometimes the supervisor would tell the crew that they needed to stay late that day, and they might stay on until 5:00 or 6:00pm. Thus, while not every day, there were occasions when he and his coworkers worked a day longer than 10 hours from start to finish. On these occasions, the Plaintiffs (and others similarly situated) were not paid any additional pay as "spread of hours" compensation.

47. Jaiteh usually worked five days per week.

48. Plaintiff Nyarko's rate of pay was $18.00 per hour

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

49. When Plaintiff Jaiteh worked more than 40 hours a week, he was paid with two separate checks. One check reflected up to 40 hours with standard payroll deductions taken out. The second check, written from a different bank account, was for overtime hours, which were paid out at a straight time rate with no withholding taxes taken out.

50. Plaintiff Jaiteh received a Form W-2 from Defendants for 2017 indicating only the amounts he received on the paychecks associated with paystubs.

51. For hours over 40 worked in the workweek, Plaintiff Jaiteh and others similarly situated were paid at a "straight time" rate (i.e. same as their regular hourly rate)

52. Thus, Plaintiff Jaiteh, like others similarly situated, was not paid at a rate of one and one half times his normal hourly rate for all hours over 40 worked in a workweek.

53. While the company provided some major equipment like water hoses, air compressors, pneumatic tools, and some safety equipment like goggles and dust masks, Plaintiff Jaiteh and his coworkers were required to provide their own tools and equipment (for example, hard hat/ helmet, work boots, pencils, and tape measure).

54. On several occasions, Plaintiff Jaiteh had a deduction of $25 taken from his pay for a harness.

**FLSA Collective Plaintiffs**

55. The Named Plaintiffs bring the First Claim for Relief as a Collective Action pursuant to 29 U.S.C. § 216(b), on behalf of all construction workers employed by Defendant on or after the date three years before the filing of the instant Complaint, in any location (the "FLSA Collective Plaintiffs").

56. Upon information and belief, all M&A construction workers are paid on an hourly basis,

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

have common or substantially similar job descriptions and duties, and are subject to common or substantially similar pay practices, policies and procedures.

57. The FLSA Collective Plaintiffs are similarly situated, in that they have had substantially similar job duties, have been subject to a common pay practices and decisions on the part of the Defendant. The FLSA claims of the Named Plaintiff alleged herein are essentially the same as those of the other FLSA Collective Plaintiffs.

58. The identities of the individuals comprising the FLSA Collective are, or should be, readily ascertainable from Defendant's records. Notice can be provided to the FLSA Collective Plaintiffs via first class mail and email.

**Rule 23 Class**

59. The Named Plaintiffs bring the Second Claim for Relief as a Class Action pursuant to Fed. R. Civ. Proc. 23, on behalf of all construction workers employed by Defendant on or after the date six years before the filing of the instant Complaint within the state of New York (the "NYLL Class Plaintiffs").

60. The number of, and identities of, the individuals comprising the NYLL Class are, or should be, readily ascertainable from Defendant's records. Notice can be provided to the NYLL Class Plaintiffs via means permissible under FRCP 23, correlative caselaw, and appropriate judicial guidance.

61. The precise number of persons is unknown, as such information is in the custody and control of the Defendants. However, upon information and belief, there are easily more than fifty (50) individuals in the proposed NYLL Class.

62. The proposed Class is so numerous that joinder of all members is impracticable. Further, the disposition of their claims as a class will benefit the parties and the Court.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

63. The Named Plaintiffs' claims are typical of those claims which could be alleged by any member of the class. Further, the relief sought by the Named Plaintiffs is typical of the relief which could be sought by any member of the proposed NYLL Class. The Class members were all subject to the same practices, decisions, policies, plans, and customs of Defendant as alleged herein. There was nothing special about the Named Plaintiffs that caused them to be treated differently than other Class members in regards to the pay methods to which they were subjected. Defendant benefitted from the unlawful withholding of wages due to members of the proposed Class and the Named Plaintiffs in the same way. Though the exact amounts may differ, Plaintiffs and other Class members incurred similar losses, injuries, and damages arising from Defendants' pay practices.

64. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Further, Plaintiffs are represented by attorneys who are experienced and competent in class/collective action litigation, employment litigation, and wage and hour employment litigation in particular.

65. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. In wage and hour litigation involving low wage workers in particular, the individual Class members more often than not lack the financial, language, time, and other resources to vigorously prosecute a lawsuit against Defendants having a superior bargaining positions. A class action will allow those similarly situated to prosecute their common claims together and minimize the need for duplicative efforts expended on their behalf. Though important and significant to Class members individually, the damages suffered by each of the individual Class members are relatively small relative to the costs associated with litigation; pooling them together therefore serves the end of efficiency.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

66. In addition, important public interests will be served by treating this claim as a class action. Otherwise, there is a risk that some workers would be compensated according to the law and others not, resulting in a net benefit to Defendant for those who were improperly paid but for whom no damages are assessed.

67. Further, many current and even former employees understandably fear untoward repercussions for asserting claims on their own. They therefore sometimes tolerate illegal treatment as an alternative preferable to having no job at all when in fact the NYLL requires proper and legal wage payments regardless of what some individuals may acquiesce to when faced with desperation and vastly unequal bargaining power positions. Class actions allow these unnamed workers to rest in their anonymity while seeing their rights vindicated.

68. There are questions of law and fact common to the Class that predominate over questions affecting class members individually. Some of these questions may include the following:

   a. Whether the workers' time has been systematically underreported;

   b. Whether the workers were paid at a straight time rate for overtime work performed;

   c. What Defendants' pay policies, practices, directives, instruction, programs, and procedures were for all relevant times;

   d. Whether Defendants maintained true and accurate time and payroll records; and

   e. What formulae are appropriate for calculating damages.

## LEGAL CLAIMS

### As And For A First Cause of Action:
### FAIR LABOR STANDARDS ACT (FLSA) VIOLATIONS

69. Plaintiffs and other similarly situated employees reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

them as though fully set forth here.

### *Failure To Pay Time Overtime Properly*

70. Defendants failed to compensate Plaintiffs and others similarly situated at a rate of one and one half times their normal hourly rate(s) for all hours over 40 worked in a workweek, in violation of the FLSA.

### *Record-Keeping Failures*

71. Defendants failed to make, keep, and preserve accurate records regarding the wages, hours, and other conditions of employment of Plaintiffs and others similarly situated, in contravention of the FLSA and affiliated Regulations, 29 U.S.C. §§ 211(c), 215(a)(5) and 29 C.F.R. § 516.

### *Willful & Not Based On Good Faith & Entitlement to Damages*

72. Defendants had no good faith basis for believing that their pay practices as alleged above were in compliance with the law.

73. The foregoing conduct constitutes a "willful" violation of the FLSA, 29 U.S.C. § 255(a).

74. As a result of the violations by Defendant of the FLSA, Plaintiffs and others similarly situated are entitled to all damages available under the FLSA which include, but are not limited to, all unpaid wages, overtime, liquidated damages, attorney fees, costs, and interest, as set forth in the FLSA, more specifically 29 U.S.C. § 216(b).

### As And For A Second Cause of Action:
### NEW YORK LABOR LAW (NYLL) VIOLATIONS

75. Plaintiffs and other similarly situated employees reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

76. At all relevant times, Plaintiffs and others similarly situated were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

### *Failure To Pay Overtime*

77. Defendants failed to compensate Plaintiffs and others similarly situated at a rate of one and one half times their regular hourly rates for hours over 40 in a workweek, in contravention of N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

### *Failure To Pay Wages*

78. Defendants failed to compensate Plaintiffs and others similarly situated for all time worked, by underreporting the quantity of hours on their time sheets (and then pay records), in contravention of NYLL § 663.

### *Spread of Hours*

79. Plaintiffs and their similarly situated coworkers worked a spread of more than 10 hours from start to finish on at least some workdays,

80. On the occasions when Plaintiffs and others similarly situated worked more than 10 hours, Defendants failed to pay them an additional one-hour's pay at the applicable minimum wage rate, in contravention of. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

### *Improper Deductions*

81. The Defendant made deductions from the wages of Plaintiff other than those authorized under NYLL § 193. See also 12 N.Y. Comp. Codes R. & Regs. 142-2.10.

82. For example, Defendants deducted $25 from Plaintiffs' pay on several occasions.

### *Failure to Provide Wage Notices and Accurate Pay Stubs*

83. Defendant failed to furnish Plaintiffs and others similarly situated with a "wage notice" containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Nyarko v. M & A*
USDC, Eastern District of New York

Complaint
Page 13

week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, in contravention of NYLL § 195(1)(a) and § 198(1)(b)

84. For the "second checks," Defendant failed to furnish Plaintiffs and others similarly situated with "pay stubs," i.e. statements with every payment of wages listing gross wages, deductions and net wages, in contravention of NYLL § 195(3), § 198(1)(d) and 12 N.Y. Comp. Codes R. & Regs. 142-2.7.

85. Further, for the pay stubs that they did receive, the hours reported on them were inaccurate, as alleged above.

***Record-Keeping Failures***

86. At all relevant times, Defendants failed to keep *true and accurate* records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of NYLL § 661.

87. At all relevant times, Defendants failed to establish, maintain and preserve for not less than three years payroll records *accurately* showing the *hours worked*, gross wages, deductions and net wages for each employee, in contravention of NYLL § 195(4) and 12 N.Y. Comp. Codes R. & Regs. 142-2.6.

88. Defendant failed to keep a time book showing the names and addresses of its employees and the [actual] *hours worked* by each of them in each day, in contravention of NYLL § 161(4).

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Nyarko v. M & A*
USDC, Eastern District of New York

Complaint
Page 14

*Damages*

89. Due to Defendant's New York Labor Law violations, Plaintiffs and others similarly situated are entitled to recover their unpaid wages, overtime, liquidated damages, interest, reasonable attorneys' fees, and costs associated with bringing the action. NYLL § 663(1).

### As And For A Third Cause of Action:
#### FRAUDULENT REPORTING

90. Plaintiffs and other similarly situated employees reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

91. Defendant willfully filed fraudulent information returns with respect to payments purported to be made to Plaintiffs and others similarly situated. 26 U.S.C. § 7434(a)

92. Therefore, Defendants are liable to the Plaintiffs and others similarly situated in an amount equal to the greater of $5,000 or the sum of actual damages, costs, and attorney's fees as to each such false filing. 26 U.S.C. § 7434(b)

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(A) Certify Count I as a Collective Action pursuant to 29 U.S.C. § 216(b);

(B) Certify Counts II and III as a Class Action pursuant to Fed. R. Civ. Proc. 23;

(C) Award Plaintiffs and others similarly situated unpaid and underpaid wages due under the FLSA and the New York Labor Law;

(D) Award Plaintiffs and others similarly situated liquidated damages in the amount of their unpaid FLSA wages pursuant to 29 U.S.C. § 216(b);

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

*Nyarko v. M & A*
USDC, Eastern District of New York

Complaint
Page 15

(E) Award Plaintiffs and others similarly situated liquidated damages pursuant to NYLL § 663;

(F) Award Plaintiffs and others similarly situated "spread of hours" pay in the amount of one times the then-applicable minimum wage rate for each day any Plaintiff worked 10 or more hours, from start to end, in a workday pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7;

(G) Award Plaintiffs and others similarly situated an amount equal to the greater of $5,000 or the sum of actual damages, costs, and attorney's fees caused by Defendants' fraudulent reporting activities for each false filing;

(H) Award Plaintiffs the costs of this action together with reasonable attorneys' fees;

(I) Award Plaintiffs and others similarly situated interest; and

(J) Award such other and further relief as this Court deems necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted, this **14** day of **September, 2018.**

ANDERSONDODSON, P.C.

*/s/ Penn Dodson*

**Penn A. Dodson (PD 2244)**
*penn@andersondodson.com*

Attorney for Plaintiffs

11 Broadway, Suite 615
New York, NY 10004
(212) 961-7639 direct
(646) 998-8051 fax

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com