**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

MALIK NYARKO and BOBAKARY JAITEH,
in their individual capacities and
on behalf of others similarly situated,

                              Plaintiffs,                    **REPORT AND RECOMMENDATION**

              v.                                             18-cv-05194 (FB) (ST)

M&A PROJECTS RESTORATION INC.,
M&A PROJECTS INC., and
BOGDAN MALINOWSKI, an individual,

                              Defendants.
--------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Malik Nyarko ("Nyarko") and Bobakary Jaiteh ("Jaiteh"), in their individual capacities

and on behalf of others similarly situated (together, "Plaintiffs"), commenced this action against

M&A Projects Restoration Inc. ("M&A"), M&A Projects Inc., and Bogdan Malinowski

("Malinowski") (together, "Defendants") on September 14, 2018.  Plaintiffs allege Defendants

violated the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*,

as well as New York Labor Law ("NYLL") Article 19, § 650, *et seq.*, and that Defendants

engaged in fraudulent reporting on Plaintiffs' tax forms.  On January 27, 2021, Plaintiffs filed a

Motion to Proceed Anonymously and a Motion to Proceed Collectively in their FLSA action.

The Honorable Frederic Block referred Plaintiffs' Motions to the undersigned to issue a Report

and Recommendation.  For the reasons set forth below, this Court respectfully recommends the

Motion to Proceed Anonymously be DENIED and the Motion to Proceed Collectively be

GRANTED.

1

## I.    BACKGROUND

### a.    Factual Background

M&A is a New York corporation doing business within Kings County, with a principal place of business located at 33 Dobbin Street, Brooklyn, New York.  Compl. ¶ 5, Dkt. No. 1. M&A Projects Inc. is a New York corporation doing business within Kings County, with a principal place of business located at 18 Division Place, Brooklyn, New York.  *Id.* ¶ 6. Malinowski is an individual who resides in Hollis, New York.  *Id.* ¶ 11.  Malinowski is one of the ten largest shareholders of M&A and, at all times relevant to this action, actively participated in the business of M&A.  *Id.* ¶¶ 12-14.  Nyarko worked as a construction helper or laborer at M&A, from September 20, 2017 to July 3, 2018.  *Id.* ¶¶ 20-21.  Nyarko was paid at an hourly rate.  *See id.* ¶ 29.  Jaiteh also worked as a construction helper or laborer at M&A, from September 1, 2017 to July 3, 2018.  *Id.* ¶¶ 39-40.  Jaiteh was paid at an hourly rate.  *See id.* ¶ 48.[1]

### b.    Procedural History

Plaintiffs commenced this action against Defendants on September 14, 2018.  *See generally id.*  On November 30, 2018, Plaintiff's counsel filed Nyarko and Jaiteh's acceptance of Defendants' Offer of Judgment.  *See* Notice of Acceptance, Dkt. No. 13.  That same day, Plaintiffs filed two letters seeking pre-motion conferences related to a Motion to Proceed Anonymously and a Motion for Collective Certification.  *See* Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously, Dkt. No. 14; Letter Mot. for Pre-Mot. Conference on Mot. for Collective Certification, Dkt. No. 15.  Attached to the former was the Proposed Amended Complaint, which substituted Nyarko and Jaiteh with a John Doe plaintiff.  *See* Letter

---

[1] Given that paragraphs 37-54 appear under the heading "Plaintiff Bobakary Jaiteh," the Court assumes the reference to Nyarko in paragraph 48 was made in error and that the stated rate pertains to Jaiteh.

Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously, Ex. A, Dkt. No. 14-1.  Though

a briefing schedule was set on the Motions, the deadlines were stayed pending the parties'

exchange of discovery and settlement negotiations.  *See*, Letter Mot. for Extension of Time to

File, Dkt. No. 31; Electronic Order, Nov. 4, 2019.  Ultimately, Plaintiffs filed the Motions on

January 27, 2021.  *See* Mot. to Proceed Anonymously, Dkt. No. 57-1; Mot. to Proceed

Collectively, Dkt. No. 57-2.  The Motions have been fully briefed.  *See generally* Mem. Opp'n

Mots. to Proceed Anonymously, Conditionally Certify Non-Existent Action ("Opp'n"), Dkt. No.

57-11; Reply Defs.' Opp'n ("Reply"), Dkt. No. 57-13.

## II.     LEGAL STANDARDS

### a.  Motion to Proceed Anonymously

Federal Rule of Civil Procedure 10(a) provides, "[t]he title of [a] complaint must name

all the parties."  "Courts have nevertheless 'carved out a limited number of exceptions to the

general requirement of disclosure [of the names of parties], which permit plaintiffs to proceed

anonymously.'"  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188 (2d Cir. 2008) (quoting

*Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 685) (11th Cir. 2001)).  The Second

Circuit has articulated a non-exhaustive list of factors that a district court should consider when

determining whether to permit a party to proceed anonymously:

> (1) whether the litigation involves matters that are highly sensitive and of a
> personal nature; (2) whether identification poses a risk of retaliatory physical or
> mental harm to the party seeking to proceed anonymously or even more critically,
> to innocent non-parties; (3) whether identification presents other harms and the
> likely severity of those harms, including whether the injury litigated against
> would be incurred as a result of the disclosure of the plaintiff's identity; (4)
> whether the plaintiff is particularly vulnerable to the possible harms of
> disclosure, particularly in light of his age; (5) whether the suit is challenging the
> actions of the government or that of private parties; (6) whether the defendant is
> prejudiced by allowing the plaintiff to press his claims anonymously, whether the
> nature of that prejudice (if any) differs at any particular stage of the litigation, and
> whether any prejudice can be mitigated by the district court; (7) whether the

plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (internal quotation marks, citations, brackets, ellipses omitted).

### b. Motion for Conditional Certification

Under the FLSA, an employee may sue on behalf of herself and other employees who are "similarly situated." 29 U.S.C. § 216(b). Those "similarly situated" employees may opt-in to a collective action brought under the FLSA, and therefore become plaintiffs, by filing a written consent form with the court. *Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718 (PGG), 2016 WL 4718413, at *5 (S.D.N.Y. Sept. 9, 2016); *see* 29 U.S.C. § 216(b).

The conditional certification of an FLSA collective action is a discretionary exercise of the court's authority; it is useful as a case management tool, facilitating the dissemination of notice to potential class members. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)). Because it is discretionary, a motion for conditional certification involves a "far more lenient" standard than a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. *Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV) (LB), 2016 WL 1070813, at *2 (E.D.N.Y. Mar. 14, 2016).

Courts in the Second Circuit apply a two-step process to determine whether an action should be certified as an FLSA collective action. *Myers*, 624 F.3d at 554–55. In the first step, the court looks at the pleadings, affidavits, and declarations to determine whether the plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *Id.* at 555.

The first step requires only a "modest factual showing" that plaintiffs and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted). The standard of proof is low "because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original). Participants in a potential collective action need not have held identical jobs or been subject to identical treatment; rather, conditional certification is appropriate where all putative class members are employees of the same enterprise and allege the same types of FLSA violations. *See Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011).

If the plaintiffs satisfy this first step and are granted conditional certification, the court will then, on a fuller record, determine whether the actual opt-in plaintiffs are in fact "similarly situated" to the named plaintiffs. *Myers*, 624 F.3d at 555. If the record reveals that the opt-in plaintiffs are not, then the court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice. *Id.*

Despite the "low burden" at the first stage, a "plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice." *Reyes v. Nidaja*, LLC, No. 14-CV-9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015). "Declarations submitted in connection with motions for certification must allege facts showing such a nexus, not mere statements that others are similarly situated." *Id.*; *see also Myers*, 624 F.3d at 555. Courts in this district have consistently held that, "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes*, 2015 WL 4622587, at *3 (citing cases).

### c.  Equitable Tolling

FLSA suits "must be brought within two years from the date of accrual, except where willful violations are alleged; in that case, the period is extended to three years." *Lora v. To-Rise, LLC*, 16-CV-3604 (RRM) (ST), 2017 WL 11604705, at *4 (E.D.N.Y. July 18, 2017), *adopted by* 2017 WL 11604704 (E.D.N.Y. Sept. 15, 2017).  "In a FLSA collective action, the statute of limitations runs for each plaintiff until he files written consent to join the lawsuit." *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011).  Nonetheless, a "statute of limitations may be tolled as necessary to avoid inequitable circumstances." *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000).  In deciding whether to apply equitable tolling, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks omitted).  A delay "caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes*, 2011 WL 844963, at *2 (collecting cases) (internal brackets omitted).

### d.  FLSA Notice

Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take or what provisions the notice should contain.  *See Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) ).  It is well settled, however, that "[t]he form of a court-authorized notice and

6

provisions contained in it are left to the broad discretion of the trial court." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007); *see also Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360(RRM)(LB), 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.") (internal quotation marks omitted).

## III.   DISCUSSION

### a.   Acceptance of Offer of Judgment Does Not Terminate Action

As a preliminary matter, the Court will assess Defendants' argument that Nyarko and Jaiteh's acceptance of Defendants' Rule 68 Offer of Judgment moots Plaintiffs' claims and terminates this action.  *See* Opp'n at 2-4.

Per the Federal Rules of Civil Procedure, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a).  Judicial approval is not required of Rule 68(a) offers of judgment that settle FLSA claims.  *See Mei Xing Yu v. Hasaki Rest.*, 944 F.3d 395, 414 (2d Cir. 2019).  While an accepted offer of judgment "ordinarily requires entry of final judgment terminating the action . . . an accepted offer of judgment does not terminate a case unless it satisfies all damages for *all plaintiffs*." *Gonyer v. Vane Line Bunkering, Inc.*, 32 F. Supp. 3d 514, 517 (S.D.N.Y. 2014) (internal citations and quotation marks omitted) (emphasis in original).  Accordingly, "where similarly situated individuals have 'opted in,' courts have refused to permit defendants to moot putative FLSA collective actions via Rule 68." *Yeboah v. Cent. Parking Sys.*, No. 06 CV 0128(RJD)(JMA), 2007 WL 3232509, at *3 (E.D.N.Y. Nov. 1, 2007); *see also Louisdor v.*

*American Telecomms., Inc.*, 540 F. Supp. 2d 368, 374 (E.D.N.Y. 2008) ("where other potential plaintiffs have expressed an interest in opting in to the action, the defendant's Rule 68 offer, even if providing complete relief to the named plaintiff, does not moot the action").  Further, "courts are wary of attempts by defendants to evade FLSA collective actions by making Rule 68 offers of judgment at the earliest possible time."  *Ward v. Bank of N.Y.*, 455 F. Supp. 2d 262, 268 (S.D.N.Y. 2006) (internal quotation marks, citations omitted).  Courts have exercised the same caution "[i]n the context of Rule 23."  *Id.*; *see Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) ("Picking off named plaintiffs by offering them a payout prior to the filing of a class certification motion is not an acceptable practice when it has the effect of preventing a viable class action from proceeding.").[2]

Here, the Offer of Judgment was accepted by both named plaintiffs.  *See* Notice of Acceptance.  However, the very day that the Notice of Acceptance was filed, Plaintiffs sought a pre-motion conference relating to their forthcoming Motion to Proceed Anonymously with a new anonymous plaintiff.  *See* Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously.  With their letter, Plaintiffs submitted a Proposed Amended Complaint that contained allegations of FLSA violations by Defendants against "John Doe."  *See* Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously, Ex. A.  Plaintiffs later filed the redacted Declaration and Consent to Join of an individual identified as "JOHN DOE 2."  *See* Consent,

---

[2] As the *Yeboah* Court explained, "in the Rule 23 context . . . permitting . . . pick-offs obviously would frustrate the objectives of class actions—that is, enabling plaintiffs to redress wrongs even where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages," and it "would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.  Both dangers appear to exist in the FLSA context, as well."  *Yeboah*, 2007 WL 3232509, at *3 (citing *Deposit Guar. Nat'l Bank, Jackson, Miss. V. Roper*, 445 U.S. 326, 339 (1980)) (internal brackets, quotation marks, citations omitted).

Dkt. No. 52[3]; *see also Gonyer*, 32 F. Supp. 3d at 517-18 (court maintained subject matter jurisdiction where plaintiff, in the same day, notified court and defendant of acceptance of offer of judgment, requested to file amended complaint with new lead plaintiff, and filed consent forms of opt-ins); *Yeboah*, 2007 WL 3232509, at *1, 5 (finding that presence of one additional plaintiff, who filed notice of consent after defendant extended offer of judgment to original plaintiff, "require[d] the conclusion that even if defendant's Rule 68 offer represented or exceeded [original] plaintiff's maximum recovery, it neither mooted plaintiff's FLSA claim nor deprived this Court of subject matter jurisdiction over this matter").  Further, in connection with their Motions, Plaintiffs allege that Defendants "have submitted materials pertaining to dozens of other similarly affected workers."  Reply at 4.

Importantly, neither party suggests that the Offer of Judgment satisfies all damages owed to Nyarko and Jaiteh.  *See Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859(PKC), 2008 WL 4702840, at *5 (S.D.N.Y. Oct. 23, 2008) (quoting *Ward*, 455 F. Supp. 2d at 267) ("even if no other plaintiffs have opted-in, courts have 'denied a defendant's motion to dismiss on mootness grounds where the plaintiff potentially could recover more than the relief offered by defendant, such as where the offer is not comprehensive, or where the amount due to plaintiff is disputed'").  As Plaintiffs indicate, the Offer of Judgment submitted to the Court was not accompanied by records or calculations.  *See* Reply at 7; Notice, Ex. A, Dkt. No. 13-1.  Defendants have not otherwise shown that the amount provided in the Offer of Judgment fully compensates Nyarko and Jaiteh for their claims.  *See Davis*, 2008 WL 4702840, at *8 (finding that action is not moot, where "record does not establish," by either "legal certainty" or a lesser standard, that "plaintiffs

---

[3] Plaintiffs also submit John Doe 2's Declaration and Consent to Join as Exhibit E to their Motion to Proceed Collectively.  *See* Mot. to Proceed Collectively, Ex. E ("John Doe 2 Decl."), Dkt. No. 57-9. This document is later referred to herein as the John Doe 2 Declaration.

could not recover in excess of the Rule 68 offers").  In fact, whether the Offer of Judgment fully compensated Nyarko and Jaiteh is in dispute.  *See* Reply at 7-8 (arguing, "the offers of judgment did not fully satisfy the two original Plaintiffs' claims," and "calculations performed after the fact show that in fact the amounts the Plaintiffs received was not full compensation"); *see also Sharma v. Burberry Ltd.*, No. CV 12-6356, 2014 WL 4802990, at *3 (E.D.N.Y. Sept. 23, 2014) ("courts have denied a motion to dismiss a case as moot is [*sic*] the offer is not comprehensive, or where the amount due plaintiff is disputed") (internal quotation marks, citation omitted); *Ritz v. Mike Rory Corp.*, 959 F. Supp. 2d 276, 280 (E.D.N.Y. 2013) ("If the defendant's offer is disputed by the named plaintiff or is less than the full relief that the plaintiff could potentially recover on the claim, the case cannot be dismissed.").

The Court has reviewed the remaining cases to which Defendants' Opposition cites in connection with their argument and finds none of them persuasive.[4]  For all of the foregoing reasons, the Court respectfully recommends finding that Plaintiffs' claims were not mooted by Nyarko and Jaiteh's acceptance of Defendants' Offer of Judgment.

---

[4] *Machado v. Law Offices of Jeffrey H. Ward*, No. 14-7401 (MAS) (TJB), 2016 WL 3574007 (D.N.J. June 29, 2016), involved only a single plaintiff, not a class.  The court in *McClain v. Hanna* applied Sixth Circuit law, emphasizing that the plaintiff's motion for class certification was a "placeholder" or "shell" motion and that one of the defendants represented the circumstances giving rise to the plaintiff's claim as "an isolated incident; the only one of its kind," thus obviating "any potential concern that Defendants are attempting to gut a valid class action."  *McClain v. Hanna*, 19-cv-10700, 2019 WL 2325678, at *7-8 (E.D. Mich. May 31, 2019).  Here, Plaintiffs present a fully briefed motion for conditional certification and have made allegations that Defendants' policies affected no fewer than four individuals, Nyarko, Jaiteh, John Doe, and John Doe 2.  Defendants do not explain their citation to *Sanders v. Houslanger and Associates, PLLC*, 17 Civ. 8985(DC), 2018 WL 6444922 (S.D.N.Y. Nov. 5, 2018), in which the court found that the plaintiffs maintained an interest in the case after accepting an offer of judgment and that "their claims were not moot."  In *DeCastro v. City of New York*, the plaintiffs "did not attempt to identify or add new . . . named plaintiffs or potential class representatives until over three years" after other plaintiffs accepted Rule 68 offers.  *DeCastro v. City of N.Y.*, No. 16-CV-3850 (RA), 2020 WL 4932778, at *9 (S.D.N.Y. Aug. 24, 2020).  Here, Plaintiffs were prepared to proceed anonymously with a new representative the very same day they filed Nyarko and Jaiteh's Notice of Acceptance.  *See* Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously.

**b. Plaintiffs are Not Entitled to Proceed Anonymously**

Plaintiffs concede that "[s]everal of the factors are simply inapplicable to the issues here." Mot. to Proceed Anonymously at 5. Plaintiffs appear to focus on the second, third, sixth, eighth, and ninth factors delineated in *Sealed Plaintiff*. *See id.* at 5-7. Plaintiffs draw the Court's attention away from the fourth factor—the vulnerability of a plaintiff—and implicate the second and third factors—concerning the harm presented by identifying a plaintiff. They contextualize the potential harm in relation to Defendants' alleged predilection to "pick off" individual plaintiffs. Specifically, Plaintiffs state, "the focus is not on the vulnerability of the two Doe Plaintiffs themselves but rather on the actions of the Defendants warranting the Court's protection of the workers at issue in this case generally," *id.* at 5, and, "[t]he potential harm is less to the plaintiffs themselves individually and more to the class of similarly situated individuals whose rights may be squelched/forgone if these plaintiffs are picked off . . . to prevent procedural developments that would bring in the rest of the workers at issue," Reply at 10. As to the sixth factor, Plaintiffs argue that Defendants "would not be unduly prejudiced by the delayed revelation of the 'Doe' Plaintiffs' names" and that Defendants would have the opportunity to conduct discovery of the Doe Plaintiffs and similarly situated individuals. Mot. to Proceed Anonymously at 7. Finally, as to the eighth and ninth factors, Plaintiffs aver that public interest is not furthered by requiring disclosure of Plaintiffs' identities and that "[i]t doesn't matter which workers brought the case"; that is, according to Plaintiffs, "the vast majority of the analysis . . . could be completed . . . with no reference to names at all, and by examining only the Defendants' own records." *Id.* at 5-6.

Ultimately, the Court finds Plaintiffs' argument for anonymity unavailing. On the topic of potential harm resulting from identification of a plaintiff, courts tend to emphasize possible

retaliation and the particular repercussions of that retaliation. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1071, 1073 (9th Cir. 2000) (reversing district court order denying FLSA plaintiffs' motion to proceed anonymously, where identification may lead to plaintiffs being fired, blacklisted, or deported, and such retaliation could result in mounting debts and imprisonment); *Agerbrink v. Model Serv. LLC*, 14 Civ. 7841 (JPO) (JCF), 2016 WL 406385, at *9-10 (S.D.N.Y. Feb. 2, 2016) (comparing facts to *Advanced Textile Corp.* and finding that FLSA "plaintiff's worries of 'termination and blacklisting' do not rise to the level of extraordinary consequences meriting anonymity"); *Michael v. Bloomberg L.P.*, No. 14-cv-2657 (TPG), 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) (denying FLSA plaintiff's request to proceed under a pseudonym, where there was "no issue . . . of physical retaliation or mental harm against plaintiff"). Here, however, Plaintiffs do not assert that they would suffer retaliation. Nor do they assert that Plaintiffs themselves would suffer harm should their identities be revealed. Rather, they appear to argue that identified Plaintiffs will be picked off to the detriment of potential opt-ins, who might then be deprived of the opportunity to participate in this action. Plaintiffs cite no authority to suggest that this sort of harm amounts to the "extraordinary consequences" that merit anonymity. *See Agerbrink*, 2016 WL 406385, at *10.

Plaintiffs' do little to explain their claim that the prejudicial effect of anonymity on Defendants is "minimal." Mot. to Proceed Anonymously at 7. They simply state that Defendants would "have the reasonable opportunity to conduct discovery" on the anonymous plaintiffs and that any prejudice "is easily remedied once the collective and class process has run its course." *Id.* Nor do they acknowledge Defendants' argument that anonymity will "[k]eep[] opt-ins in the dark." *See* Opp'n at 5-6. Finally, on the topic of public interest, Plaintiffs have not responded to Defendants' arguments that, rather than being "purely legal" in nature, "this matter

is fact intensive." *See id.* at 6. Defendants contend that this factor weighs against granting Plaintiffs' Motion because the proceedings will give rise to certain fact questions, such as "the number of hours worked" and "whether a laborer required off the clock time to prepare for his/her day's work." *Id.*[5] These questions undermine Plaintiffs' claim that it "doesn't matter" who brought the case. Mot. to Proceed Anonymously at 6.

Even if the Court were to assume, *arguendo*, that Defendants would not be prejudiced and the public's interest in the litigation would not be furthered by disclosing Plaintiffs' identities, the potential harm that Plaintiffs allege does not warrant anonymity. *See Michael*, 2015 WL 585592, at *3 (declining to depart "from the general requirement of disclosure" where there was no issue of "physical retaliation or mental harm" and case did not involve "matters of highly sensitive or personal nature").[6] Thus, the Court respectfully recommends Plaintiffs' Motion to Proceed Anonymously be denied and that Plaintiffs be required to file an amended complaint identifying the John Doe plaintiff by name. *See Michael*, 2015 WL 585592, at *4 (denying motion for protective order and directing plaintiff to "to file a second amended complaint identifying the plaintiff by name within 30 days" or face dismissal without prejudice).

As a related matter, the Court will consider Plaintiffs' request that "Defendants be barred from communicating with workers" about the issues involved in this case. Reply at 10. Plaintiffs do not expand on this request and do not cite authority in support of it.

---

[5] With regard to whether the public interest is furthered by requiring disclosure of Plaintiffs' identity, Defendants simply state, "[a]ccording to the FRCP it is. *See also, Anderson v. Montgomery Ward*." *Id.* at 6. Defendants neither cite to a specific Rule nor expand upon their argument that the Federal Rules of Civil Procedure state that disclosure is in the public interest. The Court also notes that *Anderson v. Montgomery Ward &Co., Inc.*, 852 F.2d 1008, (7th Cir. 1988), does not explicitly discuss the public interest in disclosure.

[6] Plaintiffs' final argument in favor of anonymity posits that it would be inequitable to require Plaintiffs to disclose their identities because "some of Defendants' time records" do not properly reflect workers' identifying information but instead use "names like 'Scaffold Guy 1' and 'Jose 2.'" Mot. to Proceed Anonymously at 7-8. However, Plaintiffs cite no precedent in support of this argument.

13

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Any such order that limits

> communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Id.* at 101-102 (footnotes omitted). Though *Gulf Oil* involved communications between plaintiffs' counsel and potential class members in a class action governed by Rule 23, the "same principles . . . apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA." *Zamboni v. Pepe W. 48th St. LLC*, No. 12 Civ. 3157(AJN)(JCF), 2013 WL 978935, at *2 (S.D.N.Y. Mar. 12, 2013). Moreover, the Supreme Court's reasoning in *Gulf Oil* extends to communications between defendants and potential class members. *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567(AGS), 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001).

"The Court's primary purpose in supervising communications is . . . to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." *Hinds Cty., Miss. V. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)). Accordingly, courts "have a responsibility to restrict communications that are potentially coercive or misleading." *Zamboni*, 2013 WL 978935, at *3. A communication may be coercive where a "defendant interferes with participation by potential class members in the lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation." *Id.* Likewise, there is a risk of coercion where "the class and the class

14

opponent are involved in an ongoing business relationship," such as an employment relationship. *Ralph Oldsmobile*, 2001 WL 1035132, at \*3; *see also Zamboni*, 2013 WL 978935, at \*3 ("[i]n some circumstances where there is an ongoing and unequal business or employment relationship between the parties, communications may be deemed inherently coercive"). However, "the existence of such a relationship is not enough by itself to justify precluding the communication of settlement offers to putative class members." *Griffin v. Aldi, Inc.*, 16-CV-0354 (LEK/ATB), 2017 WL 1957021, at \*4 (N.D.N.Y. May 11, 2017) (citation omitted); *see also Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12-CV-529S, 2012 WL 4764585, at \*3 (W.D.N.Y. Oct. 5, 2012) ("*ex parte* communications between defense counsel and putative class members— even *ex parte* settlement negotiations—are not abusive communications that warrant limitations absent indications in the record of the need for limitations") (quoting *Austen v. Catterton Partners V, LP*, 831 F. Supp. 2d 559, 565 (D. Conn. Apr. 6, 2011)).

In addition to the $30,000 Offer of Judgment, the Opposition states that "Defendants have paid over $400,000.00" pursuant to agreements that they "negotiated directly" with past and present employees. Opp'n at 9. The Malinowski Affidavit states that Defendants "agree[d] to pay current and former employees" "in response to this litigation," and that "[m]any of these current and former employees reached out to the Defendants seeking to resolve the issues and be paid." Malinowski Aff. ¶ 5, Dkt. No. 57-12. The exhibits to the Malinowski Affidavit identify fifty current or former employees who have settled. *See* Malinowski Aff. The affidavits of the employees contain language like the following: "I understand and agree that by accepting this payment of wages and other compensation I am giving up the rights to make a claim against M&A Projects Restoration Inc. for not paying me correctly for the time listed above." *See, e.g.*, *id.* at 011633.

15

While Plaintiffs' cast doubt on the fairness of the settlements elsewhere in their Reply, *see* Reply at 12 ("we are all meant to accept Defendants' and defense counsel's word that . . . the settlements were fair, without scrutiny by counsel . . ."), Plaintiffs' submissions do not allege that Defendants behaved coercively.  Nor have Plaintiffs demonstrated that Defendants misled the individuals with which they settled.  Importantly, Plaintiffs have not shown that a ban on Defendants' communications with potential opt-ins regarding this action is warranted.  *See OConnor v. Agilant Sols, Inc.*, 444 F. Supp. 3d 593, 607 (S.D.N.Y. 2020) ("a court must consider the rights of the parties under the circumstances in order to identify 'the narrowest possible relief which would protect the respective parties'") (quoting *Gulf Oil*, 452 U.S. at 102).  As Plaintiffs' request is unaccompanied by support, the Court cannot recommend it be granted at this time.

### c.  Plaintiffs Have Met the Conditional Certification Standard

As suggested above, the instant Motion implicates only the first phase of the FLSA certification inquiry.  Plaintiffs allege that "Defendants have systematically underpaid [low wage workers] in contravention of the requirements of the [FLSA]."  Mot. to Proceed Collectively at 4.  Specifically, Plaintiffs assert, "when workers have worked more than 40 hours in a workweek, Defendants have issued a second check, issued from a separate bank account, at the workers' 'straight time' (rather than 'time-and-a-half') rate of pay."  *Id.*  Defendants' arguments against conditional certification concern the anonymity of the representatives.  *See* Opp'n at 10-11.  As discussed, this Court recommends that Plaintiffs' Motion to Proceed Anonymously be denied.  Defendants' remaining arguments do not address conditional certification itself, but rather focus on Plaintiffs' proposed notice and whether equitable tolling applies.  *See id.* at 11-14.

16

### i. Unlawful Policy

In support of their Motion, Plaintiffs submit declarations from Nyarko, Jaiteh, and John Doe 2.  *See* Mot. to Proceed Collectively, Ex. C ("Nyarko Decl."), Dkt. No. 57-7; Mot. to Proceed Collectively, Ex. D ("Jaiteh Decl."), Dkt. No. 57-8; John Doe 2 Decl.  All three declarants state that they were compensated for overtime hours at their "straight pay" hourly rates, rather than at "time-and-a-half" rates.  *See* Nyarko Decl. ¶ 9 (stating that when he worked more than 40 hours in a week, he "was paid with two separate checks.  One check reflected up to 40 hours with standard payroll deductions taken out.  The second check was for overtime hours, which were paid out at a straight time rate with no withholding taxes taken out."); Jaiteh Decl. ¶ 11 ("When I worked more than 40 hours a week, I would receive two checks: one for the time up to 40 hours . . . and another check that looked different that was just for my normal hourly rate times the number of overtime hours I had worked that week."); John Doe 2 Decl. ¶ 6 (recalling at least one occasion when he worked overtime and "received two checks.  The first check was a normal payroll check, with taxes taken out, for the first 40 hours.  The Second check was just the amount of overtime hours times my "straight time" hourly rate . . . with no taxes taken out."). The Court further notes that the Complaint and the Proposed Amended Complaint both contain similar allegations.  *See* Compl. ¶¶ 30-33, 49-52, 70; Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously, Ex. A ¶¶ 31-34, 51.  For example, both documents claim that Plaintiffs and "others similarly situated were paid at a 'straight time' rate" for "hours over 40 worked in the workweek."  Compl. ¶¶ 32, 51; Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously, Ex. A ¶ 33.  The pleadings and declarations together amount to a modest factual showing of a common policy in violation of the FLSA.  *See, e.g.*, *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 320 (E.D.N.Y. 2016) (finding plaintiff made modest factual

showing where plaintiff declared defendants did not pay him "overtime at the overtime rate pay, and instead paid him cash at the regular rate of pay for his overtime hours"); *Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 270 (S.D.N.Y. 2012) (finding plaintiffs "made a modest factual showing that the foremen and laborers . . . did not receive overtime wages," where each plaintiff declared "defendants paid him by check for the first 40 hours worked and in cash for any additional hours worked, with all hours paid at the same 'straight time' rate").

### ii.  Similarly Situated

The Motion identifies members of the proposed collective as "hourly workers who have worked for the Defendants' construction company within the statutory period."  Mot. to Proceed Collectively at 3.  Defendants do not address this claim.  The Proposed Amended Complaint alleges that John Doe worked at M&A as a "construction helper or laborer," which involved "assisting in the restoration of old buildings" and helping "lay brick, grind brick, and wash brick walls."  Letter Mot. for Pre-Mot. Conference on Mot. to Proceed Anonymously, Ex. A ¶¶ 22-23. Likewise, the Complaint alleges that Nyarko and Jaiteh worked as construction helpers or laborers.  Compl. ¶¶ 21-22, 40-41; *see* Nyarko Decl. ¶ 3; Jaiteh Decl. ¶ 3.  John Doe 2 declares he worked for M&A as a construction worker.  John Doe 2 Decl. ¶ 3.

The Court is not certain whether the term "workers," as used in the Motion, refers to construction workers[7] or, more broadly, to Defendants' employees in general.  Nor is it apparent what other titles are held by hourly, nonexempt employees of Defendants, or whether individuals in those roles are similarly situated to construction workers and construction helpers or laborers. To be clear, the Court declines to conditionally certify a collective of all hourly, nonexempt employees of Defendants.  The Court instead respectfully recommends the conditional

---

[7] The Complaint specifies that Plaintiffs bring their FLSA claim on behalf of "construction workers" employed by Defendants.  *See* Compl. ¶ 55.

certification of a collective that includes all hourly, nonexempt construction workers and

construction helpers or laborers employed by Defendants during the statutory period, discussed

below.  *See Zhongle Chen v. Kicho Corp.*, 18 CV 7413 (PMH) (LMS), 2020 WL 1900582, at *7-

8 (S.D.N.Y. Apr. 17, 2020) (on unopposed motion to certify, limiting collective to "all current

and former non-managerial, non-exempt employees who are or were employed by Defendants as

cook or wait staff" because requested collective of "all non-exempt, non-managerial employees"

would be overbroad based on allegations in complaint and affidavit).

### d.  Equitable Tolling Applies

Plaintiffs request that the statute of limitations be tolled as of September 14, 2018, the

date on which they filed the Complaint, due to delays caused by settlement discussions, the

Coronavirus pandemic, the time required for this Court to respond to motions.  *See* Mot. to

Proceed Collectively at 17-18.  Defendants aver that equitable tolling should not apply because

there exists a dispute of material fact as to whether Defendants' employees knew they were

entitled to overtime pay.  Opp'n at 13-14.

Within weeks of Defendants' counsel filing his Notice of Appearance, *see generally*

Notice of Appearance, Dkt. No. 6, Plaintiffs' counsel invited Defendants to stipulate to collective

certification via email.  *See* Mot. to Proceed Collectively, Ex. F, Dkt. No. 57-10.  Approximately

one month later, Plaintiffs sought a pre-motion conference to discuss a motion for conditional

certification.  *See generally* Letter Mot. for Pre-Mot. Conference on Mot. for Collective

Certification.  A briefing schedule on the Motions was set.  Electronic Order, Apr. 29, 2019.  The

parties exchanged discovery and engaged in settlement discussions, during which time the

briefing deadlines for the Motions were stayed.  *See*, Letter Mot. for Extension of Time to File

(describing financial records Defendants produced as "voluminous"); Electronic Order, Nov. 4,

2019.  Thereafter, settlement discussions were delayed in part due to the Coronavirus pandemic. *See* Letter Mot. to Adjourn Conference, Dkt. No. 38; Electronic Order, May 8, 2020.  Plaintiffs' Motion to Proceed Collectively is dated December 22, 2020 and briefing on the Motion was completed on January 26, 2021.  *See generally* Mot. to Proceed Collectively; Reply.  Though more than two years have passed between Plaintiffs' request for a pre-motion conference and service of the Motion, a review of the docket makes clear that Plaintiffs pursued this matter diligently.

As the cases cited by Plaintiffs indicate, *see* Mot. to Proceed Collectively at 16; Reply at 19, district courts in the Second Circuit have found it appropriate to toll the limitations period in FLSA actions on the date of plaintiffs' motions for conditional certification.  *See, e.g.*, *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 354-56 (S.D.N.Y. 2017); *Varghese*, 2016 WL 4718413, at *10-11; *Yahraes*, 2011 WL 844963, at *2-3.  Defendants' Opposition does not address this practice.  Rather, Defendants suggest that equitable tolling should not apply because Plaintiffs "potentially dispute" Defendants' contention that "their employees knew they were entitled to overtime pay."  Opp'n at 13.  In putting forth this argument, Defendants cite *Saunders*, in which the plaintiffs sought equitable tolling on the grounds that the defendants failed to post required FLSA notices, concealing from the plaintiffs their rights.  *Saunders v. City of N.Y.*, 594 F. Supp. 2d 346, 359, 363-64 (S.D.N.Y. 2008).  Because there was a dispute of material fact over whether the plaintiffs in *Saunders* knew of their rights as outlined in the required notices, the court denied equitable tolling.  *Id.* at 363-64.  Here, as described, Plaintiffs seek equitable tolling on entirely different grounds and *Saunders* is therefore inapplicable. Accordingly, it is appropriate to toll the statute of limitations on December 22, 2020, the date of Plaintiff's Motion, at the latest.

The Court next considers Plaintiffs' request that the statute of limitations be tolled on September 14, 2018, the date on which the Complaint was filed. The docket reflects delays attributable to the Court's own scheduling conflicts, *see* Scheduling Order, Jan. 22, 2019; Scheduling Order, Jan. 28, 2019, repeated issues pertaining to the late production of documents, *see* Mot. to Produce Defs.' Timekeeping Data, Payroll, & Bank Records, Dkt. No. 25; Mot. for Order to Show Cause, Dkt. No. 29; Mot. to Compel Regarding Defs.' Failure to Substantively Respond to Disc. Reqs., Dkt. No. 50, the at times lengthy period required for the Court to respond to motions, *see* Mot. for Pre-Mot. Conference Regarding Collective Certification, Dkt. No. 48; Electronic Order, Dec. 18, 2020, the settlement of the related case *Calle et al v. M&A Projects Inc. et al*, 18-cv-7064, *see* Min. Order for July 28, 2020 Fairness Hr'g, Dkt. No. 47, and, as referenced, the postponement of a settlement conference due to the Coronavirus pandemic. Accordingly, the Court respectfully recommends that the statute of limitations be tolled from the date on which the Complaint was filed, September 14, 2018. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 126-128 (E.D.N.Y. 2020) (equitably tolling limitations period in FLSA action from date on which complaint was filed, more than two years before plaintiffs filed motion for conditional certification, where case involved "protracted discovery proceedings" and simultaneous discovery on two separate motions).

As a final note on the topic of the statute of limitations, the Court respectfully recommends that the three-year limitations period for willful violations apply. *See* 29 U.S.C. § 255(a). Plaintiffs have alleged that Defendants' violations were willful. *See* Compl. ¶¶ 72-73. "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Valerio v. RNC Indus. LLC*, 314 F.R.D. 61, 73-74 (E.D.N.Y. 2016) (quoting *Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647,

2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015)).  Defendants' Opposition does not dispute application of the three-year period.

### e.  Proposed Notice Plan

Plaintiffs seek approval of their proposed notice procedures.  *See* Mot. to Proceed Collectively at 12-16; Proposed Notice, Dkt. No. 57-3; Proposed Consent, Dkt. No. 57-4.  Below, the Court addresses Plaintiffs' requests and, where applicable, Defendants' objections to these requests.

### i.  Notice Period and Individuals to Whom Notice is Sent

Plaintiffs argue that notice should be issued to "all hourly, nonexempt individuals employed by Defendants on or after the date six years before the filing of the Complaint in this action."  Mot. to Proceed Collectively at 12.  Defendants disagree, contending that notice should extend back to those employed by Defendants within three years of the commencement of this action.  Opp'n at 11-12.

As indicated above, the FLSA has a maximum statute of limitations period of three years.  29 U.S.C. § 255(a).  This differs from the NYLL's limitations period, which is six years.  NYLL § 663(3).  As Plaintiffs suggest, courts in this district "have held that where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims."  *Anjum v. J.C. Penney Co., Inc.*, No. 13 CV 460 (RJD)(RER), 2015 WL 3603973, *12 (E.D.N.Y. June 5, 2015) (quoting *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203(JS)(AKT), 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013)).  The "more recent trend," however, is to "approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims under federal and state wage and hour laws

22

with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred under the FLSA." *Alvarado v. GC Dealer Servs. Inc.*, 18-cv-2915 (SJF)(SIL), 2018 WL 6250994, at *4 (E.D.N.Y. Nov. 29, 2018) (ellipses, brackets omitted) (quoting *Mongiove v. Nate's Corp.*, No. 15-cv-1024, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016)). As the Motion explicitly requests "permission to proceed collectively pursuant to the FLSA" and there is currently no pending motion for certification of the NYLL collective class, the Court finds it appropriate to adhere the "recent trend" and apply the three-year notice period. *See Ramos v. Platt*, 13-CV-8957-GHW, 2014 WL 3639194, *4 (S.D.N.Y. July 23, 2014) (adopting three-year notice period, "where no motion for class certification of the NYLL claims is simultaneously pending" with motion for conditional certification of FLSA class).[8]

Moreover, as the Court has limited the collective to hourly, nonexempt construction workers and construction helpers or laborers employed by Defendants, the notice should be distributed to individuals who hold or held hourly, nonexempt roles with similar titles. *See*

---

[8] Relatedly, the Court respectfully recommends the proposed notice be amended to clarify that it applies specifically to Plaintiffs' FLSA claims. While "a plaintiff is not categorically prohibited from referencing state law claims . . . brought together with claims under the FLSA" in its notice, the proposed notice conflates Plaintiffs' FLSA and NYLL claims. *Williams v. TSU Glob. Servs. Inc.*, 18-cv-72 (RRM) (ST), 2018 WL 6075668, at *7 (E.D.N.Y. Nov. 20, 2018), *adopted by* 2019 WL 1056273 (E.D.N.Y. Mar. 1, 2019). For example, the second page of the proposed notice refers to "a claim" brought pursuant to the FLSA and NYLL. *See* Proposed Notice at 2. In the Q&A section, beneath the heading "What is this claim about?", the proposed notice again discusses alleged violations of both the FLSA and the NYLL as a singular claim. *See id.* at 3. As this Court has previously explained,

> the imprecise nature of these statements is not inconsequential. The Notice as written may lead opt-in collective members to believe, incorrectly, that their claims under the NYLL may be vindicated by means of the same collective action provided for by the FLSA, including believing that the other terms in the Notice (for example, the binding nature of their agreement to proceed as a collective action, [*id.* at 2], the contingency fee arrangement, [*id.* at 4] also apply to their NYLL claims. Plaintiffs may not attempt to induce more [of Defendants'] employees to opt in by implying that the collective can vindicate potential NYLL claims, which Plaintiffs' counsel are no doubt aware is inaccurate.

*Williams*, 2018 WL 6075668, at *7. As the Motion to Proceed Collectively relates to conditional certification pursuant to the FLSA, Mot. to Proceed Collectively at 3, the Court recommends the notice be revised to reflect that it concerns the FLSA collective.

*Sobczak*, 540 F. Supp. 2d at 364-65 (limiting distribution of notice to "current and former employees of defendants with similar occupational titles to the named and opt-in plaintiffs").

Based on the foregoing, the Court respectfully recommends that notice be distributed to individuals employed by Defendants as hourly, nonexempt construction helpers or laborers or construction workers, on or after September 14, 2015.

### ii.  Production of Contact Information

Plaintiffs request that the Court compel Defendants to produce the following information pertaining to potential opt-ins: full names (including nicknames or alternate spellings); all known mailing addresses; all known phone numbers; all known email addresses; primary language, if other than English; dates of employment; and positions held.  Mot. to Proceed Collectively at 13. Plaintiffs request this information for "individuals whose names appear in any of [Defendants'] timekeeping and other records, not just the ones that appear in their payroll records."  *Id.* Plaintiffs ask that this information be delivered in a native Excel format within fourteen days of the Court's order.  *Id.*  Defendants do not oppose.

"Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."  *Lovelace v. Land Appliance Servs., Inc.*, 18-CV-6892 (DLI) (ST), 2020 WL 8921382, at *7 (E.D.N.Y. Jan. 3, 2020) (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016)), *adopted by* 2020 WL 8921381 (E.D.N.Y. Mar. 31, 2020); *see also Tate v. WJL Equities Corp.*, No. 13-CV-8616, 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) ("Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification.").  Moreover, the Court does not find the fourteen-day deadline

24

proposed by Plaintiffs to be unreasonable.  *See Castillo v. Perfume Worldwide Inc.*, CV 17-2972 (JS) (AKT), 2018 WL 1581975, at *16-17 (E.D.N.Y. Mar. 30, 2018) (requiring defendants to produce contact information of potential opt-ins within fourteen days of order).  Finally, courts have required that the contact information of potential FLSA collective members be produced in Excel files, if possible.  *See Mei Rong Du v. Dingxiang Inc.*, 19-CV-11924 (JPO) (BCM), 2020 WL 7404984, at *13 (S.D.N.Y. Dec. 17, 2020) (ordering defendants to produce contact information "in [E]xcel, if possible"); *Jacob v. Duane Reade., Inc.*, No. 11-cv-0160 (JPO), 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012) (granting plaintiffs' request that defendants produce contact information in Microsoft Excel file).

Given the foregoing, the Court respectfully recommends that Plaintiffs' requests concerning Defendants' production of the potential opt-ins' contact information be granted.

### iii.  Contents of Notice and Consent Forms

#### 1.  Language of Notice and Consent Forms

Plaintiffs seek to circulate versions of the notice and consent forms printed primarily in English.  *See* Mot. to Proceed Collectively at 14.  However, Plaintiffs also request to include in these materials a notation in a variety of languages that advises recipients on how to request translated versions of the notice and consent form.  *Id.*  Plaintiffs believe Defendants' workforce to be "comprised of individuals of a variety of primary languages, including Polish, Russian, Spanish, and various African languages."  *Id.*  The proposed notice that Plaintiffs submit in connection with the Motion contains a cover page that includes directions, printed in English, Spanish, Polish, and Russian, on how to request a translation of the document.  *See* Proposed Notice, Dkt. No. 57-3.  Defendants do not object to Plaintiffs' request.

"Generally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Valerio*, 314 F.R.D. at 76 (internal quotation marks omitted) (collecting cases).  The Court thus respectfully recommends that Plaintiffs' requests regarding the languages of the notice and consent form be granted.

## 2.    Defense Counsel's Contact Information

Defendants argue that defense counsel's contact information should be included in the notice.  *See* Opp'n at 11.  Plaintiffs object.  *See* Reply at 15-16.  Plaintiffs also contend that, if defense counsel's contact information is included, it should be accompanied by language that instructs recipients who decide to join the case not to contact defense counsel.  *Id.* at 16 n.5.

In arguing against inclusion of defense counsel's contact information, Plaintiffs cite to cases from outside of the Second Circuit.  Courts within the Second Circuit, however, have "generally concluded" that it is appropriate to include the defense counsel's contact information in the notice of an FLSA collective action.  *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (citation omitted); *see also, e.g.*, *Panora v. Deenora Corp.*, 19-cv-7267 (BMC), 2020 WL 7246439, at *4 (E.D.N.Y. Dec. 9, 2020); *Castillo*, 2018 WL 1581975, at *14.

Courts in the Eastern District of New York have favored the inclusion of defense counsel's contact information in a way that clearly delineates it as such, to avoid confusion on the part of the recipient.  *See Jibowu*, 2020 WL 7385695, at *5 (allowing inclusion of defense counsel's contact information in a separate "section titled 'What Happens If I Do Not Join?'"); *Sultonmurodov v. Mesivita of Long Beach*, 15-CV-1654 (LDW)(AYS), 2015 WL 5918415, at *3 (E.D.N.Y. Oct. 9, 2015) (allowing inclusion of defense counsel's contact information "as a response to the form question: 'Do the Defendants have a lawyer in this case?'").  Further, courts

26

have recently required defense counsel's contact information to be accompanied by "an explicit warning to employees . . . not to contact defense counsel if they decide to join the lawsuit." *Jibowu*, 2020 WL 7385695, at *5 (requiring warning to be "in bolded italics"); *see also, e.g.*, *Cuaya v. VI Dev. Grp., LLC*, 19-CV-4290 (JLC), 2020 WL 5494371, at *11 (E.D.N.Y. Sept. 10, 2020) (notice should "include the following language: **If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so**") (citation omitted) (emphasis in original); *Cherif v. Sameday Delivery Corp.*, 13-CV-1341 (RJD)(MDG), 2015 WL 5772012, at *8 (E.D.N.Y. Sept. 20, 2015) ("notice shall direct the potential plaintiffs that 'if you decide to join this case, you should not contact the defendants' lawyer directly yourself.'") (citation omitted).

Based on the foregoing, the Court respectfully recommends that defense counsel's contact information be included in the notice, but that it be included in a way that clearly identifies it as such and that it be accompanied by the following, emphasized language: **If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so**. *See Cuaya*, 2020 WL 5494371, at *11.

### 3.  Plaintiffs' Invitation

Plaintiffs' proposed notice states, in part: "Four former employees of M&A ('Plaintiffs') have sued M&A Projects Restoration Inc. and/or M&A Projects Inc., and their owner, Bogdan Malinowski, ('Defendants') regarding wages." *See* Proposed Notice.  The paragraph concludes: "Now they are inviting you to join them in this claim." *See id.*  Defendants object to this language, arguing in substance that the two original Plaintiffs "invite no one" because "[t]hey accepted the Offer of Judgment," and that the "two (2) anonymous putative Plaintiffs should not be inviting anyone when they won't even tell the alleged invitees their names."  Opp'n at 13.

27

Plaintiffs disagree, arguing that the "word 'invite' does not occur anywhere in Plaintiffs' proposed notice." Reply at 17.

The proposed notice clearly suggests that "[f]our former employees" are "inviting" recipients to join in the FLSA action. *See* Proposed Notice. The only four individuals that Plaintiffs have brought to the Court's attention are Nyarko, Jaiteh, John Doe, and John Doe 2. As Nyarko and Jaiteh have accepted the Offer of Judgment, it would be inaccurate to state that they invite potential opt-ins to join them. Though Plaintiffs dispute whether the Offer of Judgement fully compensates Nyarko and Jaiteh, Plaintiffs do not indicate that Nyarko and Jaiteh are presently involved in the litigation. As this Court recommends that Plaintiffs not be permitted to proceed anonymously, Defendants' concern regarding John Doe and John Doe 2's anonymous invitations is moot. Accordingly, the Court respectfully recommends that the sentence referencing "[f]our former employees" be revised as follows: "Two former employees of M&A ('Plaintiffs') are suing M&A Projects Restoration Inc. and/or M&A Projects Inc., and their owner, Bogdan Malinowski, ('Defendants') regarding wages."

### 4. Whether Notice May Advise that Potential Opt-Ins May Join if They Have Already Settled

The Q&A section of the proposed notice includes the following text:

Can I participate in this claim even if I have accepted money and/or signed a release of claims related to my wages with M&A?

Yes. If you have signed any documents or entered into any kind of "settlement" with M&A related to your wages, you may still submit a claim form in this case. If a court of law has not formally approved the agreement, the settlement might not be valid and/or you could be entitled to receive additional money.

Proposed Notice at 4.[9]  Defendants take issue with this, arguing that potential opt-ins "should not be advised they may join regardless of whether or not they already settled.  Rather they should at most be advised their settlement may or may not bar their participation, a determination for the Court (not putative Plaintiffs' Counsel) to make."  Opp'n at 13.  Plaintiffs contend that this portion of the proposed notice "simply invites [recipients] to submit their forms" and "does not indicate that they will be definitely entitled to additional money."  Reply at 17.  Neither party cites authority.

The proposed notice does not explicitly state that recipients will be able to join regardless of whether they have settled.  However, the Court finds "participate," as it appears in the question, to be ambiguous.  To better serve as an invitation to recipients—as Plaintiffs suggest is its purpose—the Court respectfully recommends that the question be modified to read: "Can I submit a claim form even if I have accepted money and/or signed a release of claims related to my wages with M&A?"

### iv.  Methods of Distribution

Plaintiffs contend that several methods of distribution are necessary, "[d]ue to the transient nature of the workforce."  Mot. to Proceed Collectively at 14.  Accordingly, Plaintiffs seek to disseminate the notice and consent form "via regular mail, email, text (SMS) links, and online posting," and ask that the notice and consent form "be included along with all current employees' paychecks for a certain designated pay period such as the one closest to three weeks following the date of the Court's Order."  *Id.* at 15.  With respect to distribution by mail, Plaintiffs request permission to "re-send[] notices to any returned as undeliverable for whom

---

[9] The Court notes that both this question and the preceding question are numbered "8" on the proposed notice.  The numbering of the questions should be corrected in the finalized notice.

substitute addresses can be found with reasonable diligence." *Id.* Defendants' Opposition does not address Plaintiffs' requests concerning methods of distribution.

"Courts in the Second Circuit have permitted dissemination of notice by mail, email, and text message 'where, as here, the nature of the employer's business facilitated high turnover rate among employees.'" *Chui v. Am. Yuexianggui of LI LLC*, CV 18-5091 (SJF) (AKT), 2020 WL 3618892, at *20 (E.D.N.Y. July 2, 2020) (quoting *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)). The Court therefore respectfully recommends that Plaintiffs' request to disseminate the notice and consent form by mail, email, and text message be granted. Further, to assure that putative plaintiffs receive accurate and timely notice of this FLSA action, the Court respectfully recommends granting Plaintiffs' request to re-send notices to those individuals for whom the notice is returned as undeliverable and a substitute address is available. *See Lovelace*, 2020 WL 8921382, at *5 ("Accurate and timely notice fits with the broad remedial purpose of the FLSA and facilitates efficient judicial resolution of suits.") (internal quotation marks, citation omitted). Plaintiffs' counsel or a third-party claims administrator shall be responsible for re-sending the notices.

Plaintiffs do not explain the meaning of dissemination by "online posting." Should Plaintiffs intend to request dissemination by social media, the Court notes that its peers in this district have denied distribution by such means where a plaintiff "has not provided any justification to deviate from the traditional methods generally accepted by courts sitting in this Circuit for disseminating notice to the putative collective members." *Chui*, 2020 WL 3618892, at *10 (citing *Qian Xiong Lin v. DJ's Int'l Buffet Inc.*, No. 17-CV-4994, 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019)). In any event, because Plaintiffs have not defined "online posting," the Court respectfully recommends that their request for distribution by this method be denied.

Finally, courts in this Circuit have adopted different approaches toward the distribution of FLSA notices with paychecks. *See Ni v. Red Tiger Dumpling House Inc.*, CV 19-3269 (GRB) (AKT), 2020 WL 7078533, at *12 (denying request where plaintiffs cited no supporting caselaw, and "find[ing] that authorizing dissemination in pay envelopes would place an added burden on the employer to first determine who the affected individuals are and then segregating those pay stubs for the notice to be enclosed"); *Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 388 (S.D.N.Y. 2018) (denying request and advising that "[e]nclosure of a notice in a pay envelope . . . is not always ideal because it may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer"); *Alvarez v. Schnipper Rests LLC*, 16 Civ. 5779 (ER), 2017 WL 6375793, at *6 (S.D.N.Y. Dec. 12, 2017) (instructing parties to "discuss the best methods used to provide current employees of Defendants notice of the lawsuit, including . . . by enclosing notice within a pay envelope"). Plaintiffs cite no authority in support of their request to disseminate notice with Defendants' current employees' paychecks. Moreover, the collective is composed only of individuals with the roles of construction helper or laborer and construction worker. Accordingly, if the Court were to grant Plaintiffs' request, it would impose on Defendants the "added burden" of identifying individuals in those roles and separating their pay stubs to enclose the notice. *See Ni*, 2020 WL 7078533, at *12; *Chui*, 2020 WL 3618892, at *11. In light of these considerations, the Court respectfully recommends that Plaintiffs' request for distribution of notice with current employees' paychecks be denied.

### v. Timing

Plaintiffs propose the following timeline concerning the dissemination of the notice and the opt-in period: Defendants will produce the contact information of potential opt-ins within

fourteen days of the Court's order approving the proposed notice; Plaintiffs' counsel will distribute the notice in one-to-two weeks of receiving the contact information; the opt-in period will remain open for ninety days from the date of initial dissemination. Mot. to Proceed Collectively at 16. Defendants do not object to the proposed timeline.

As discussed above, the Court recommends that Defendants be required to produce to Plaintiff the potential collective members' contact information within fourteen days of the Court's order. *See Castillo*, 2018 WL 1581975, at *16-17. Moreover, Plaintiffs' request for one to two weeks to prepare the notice for distribution appears reasonable. As to the proposed opt-in period, a period of sixty days is "common practice under the FLSA." *Cohan*, 2013 WL 8367807, at *12. Though "some courts have granted up to 90-day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Bittencourt*, 310 F.R.D. at 117 (quoting *Whitehorn v. Wolfgang's Steakhouse*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011). Plaintiffs have not explained why an extended, ninety-day opt-in period is warranted. Accordingly, the standard sixty-day opt-in period is appropriate. *See Chui*, 2020 WL 3618892, at *10 (denying request for ninety-day opt-in period and implementing sixty-day opt-in period, where plaintiff did not explain why longer period was justified); *Zhongle Chen*, 2020 WL 1900582, at *11 (same); *see also Fa Ting Want v. Empire State Auto Corp.*, No 14-cv-1491 (WFK)(VMS), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) ("Courts in this Circuit 'routinely restrict the opt-in period to sixty days.'") (citations omitted) (collecting cases).

Based on the above, the Court respectfully recommends that Plaintiffs' first two requests regarding the proposed timeline be granted, but that their request for a ninety-day opt-in period

be denied.  Instead, the Court respectfully recommend that a sixty-day opt-in period apply and
that the notice and consent form reflect such a period.

### vi.  Return of Consent Forms

The proposed consent form directs recipients to return the completed form to Plaintiffs'
counsel.  *See* Proposed Consent.  Defendants contend that the form should be returned to the
Court, as returning it to Plaintiffs' counsel could "improperly discourage[] class members from
seeking outside counsel."  *See* Opp'n at 13 (quoting *Bowens v. Atlantic Maint. Corp.*, 546 F.
Supp.2d 55, 84-85 (E.D.N.Y. 2008)).  Plaintiffs rebut that there is little chance a recipient will be
unfairly discouraged from seeking counsel, as the Q&A section of the notice "makes it clear that
participants can choose to be represented by other counsel."  Reply at 18.

"Courts within this Circuit have split on whether the consent forms should be returned to
the Clerk of the Court or to the plaintiff's attorney."  *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp.
3d 247, 257 (E.D.N.Y. 2014).  Some have found that, so long as the notice informs opt-ins that
they can retain their own counsel, returning consent forms to plaintiffs' counsel is appropriate.
*See id.* at 257-58 (identifying return of consent forms to plaintiffs' counsel as "the more
practicable and efficient method"); *Mata-Primitivo v. May Tong Trading Inc.*, No. CV 2013-
2839(CBA)(MDG), 2014 WL 2002884, at *6 (E.D.N.Y. May 15, 2014) (ordering that notice
direct opt-ins to send consent to plaintiffs' counsel and also that notice "be modified to clearly
indicate" opt-ins have right to select their own counsel).  However, the "most common practice
within the Circuit" is to direct the potential opt-ins to return their consent forms to the Clerk of
Court.  *Williams*, 2018 WL 6075668, at *8 (E.D.N.Y. Nov. 20, 2018); *see Han v. Shang Noodle
House, Inc.*, 10 Civ. 2266 (PKC) (VMS), 2021 WL 3774186, at *12 (explaining that sending
consent forms to Court "avoids potential disputes regarding the timeliness of opt-ins and

reinforces that opt-in plaintiffs may seek their own counsel"); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 462 (E.D.N.Y. 2014) (noting "common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel" and collecting cases). Plaintiffs have not explained why the Court should deviate from this common practice. Accordingly, the Court respectfully recommends that the proposed notice be modified to direct potential opt-ins to return their completed consent forms to the Clerk of the Court.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' Motion to Proceed Anonymously be DENIED and that Plaintiffs be required to file an amended complaint identifying the John Doe plaintiff by name. The Court also respectfully recommends that Plaintiffs' Motion to Proceed Collectively and for Equitable Tolling be GRANTED and that the conditional collective be composed of all hourly, nonexempt construction workers and construction helpers or laborers employed by Defendants on or after September 14, 2015.[10] Further, the Court respectfully recommends:

- The notice be distributed to individuals employed by Defendants as hourly, nonexempt construction helpers or laborers or construction workers, on or after September 14, 2015.

- Defense counsel's contact information be included in the notice, but that it be included in a way that clearly identifies it as such and that it be accompanied by the following,

---

[10] The Court notes that a portion of Defendants' Opposition argues that settlements between Defendants and "individual current and future employees" cannot be nullified. Opp'n at 7-9. Because it does not appear to be related to either of the Motions currently before the Court, the Court declines to address this argument. Likewise, the Court declines to address Plaintiffs' response to this argument, which includes requests that the Malinowski Affidavit submitted in connection with Defendants' Opposition be stricken and that the Court deny *Cheeks* review of Defendants' settlements with its employees. *See* Reply at 11-15.

emphasized language: "**<u>If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so</u>**."

- The first sentence of the first bullet on page two of the proposed notice be modified to read: "Two former employees of M&A ('Plaintiffs') are suing M&A Projects Restoration Inc. and/or M&A Projects Inc., and their owner, Bogdan Malinowski, ('Defendants') regarding wages."

- The second question "8" in the Q&A section of the proposed notice be modified to read: "Can I submit a claim form even if I have accepted money and/or signed a release of claims related to my wages with M&A?"

- The notice be distributed by mail, email, and text message, but not by online posting or with Defendants' current employees' paychecks.

- The parties adhere to the following timeline: within fourteen days of the entry of this Court's order, Defendants will produce to Plaintiffs the contact information, as described above, of potential opt-ins, in an Excel file, if possible; no more than two weeks after receiving the potential opt-ins' contact information, Plaintiffs will disseminate the notice and consent forms; the opt-in period will remain open for sixty days from the date of dissemination.

- Consent forms are to be returned to the Clerk of Court of the Eastern District of New York, and the notice is to be amended to reflect this instruction.

- The notice be revised to reflect that it concerns the FLSA collective.

- The numbering of the questions in the Q&A section of the notice be corrected.

- The notice reflect a sixty-day opt-in period.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


_____
          /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
September 13, 2021